IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| SHABBIR MANJEE ) | |
| ) | |
| Plaintiff, ) | |
| ) | 22-cv-4640 |
| v. ) | |
| VILLAGE OF DOLTON, et al, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' JOINT LR 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

1. Cmdr. Lacey obtained a copy of the Ordinance for Interfering with an Open Air Meeting from Cmdr. Staples. *See* Exhibit 5 (Lacey Deposition Transcript, 186:21-187:21).

2. The Ordinance he received stated "No person shall unreasonably ham[p]er, obstruct or impede, or interfere with any person in a public/open air meeting." *See* Exhibit 5 (Lacey Deposition Transcript, 189:18-190:1).

3. The ordinance does not state any sort of geographical limitation on the applicability of the ordinance. *See* Exhibit 4 (Staples Deposition Transcript, 50:16-21).

4. Cmdr. Lacey was not previously aware of the existence of this Ordinance prior to receiving a copy. *See* Exhibit 5 (Lacey Deposition Transcript, 198:8-11).

5. Cmdr. Lacey based his decision to detain Manjee based on the ordinance he received. *See* Exhibit 5 (Lacey Deposition Transcript, 198:12-16).

6. Cmdr. Lacey used the ordinance because that is what he was given, and he believed it to be correct. *See* Exhibit 5 (Lacey Deposition Transcript, 199:17-22).

7. Cmdr. Lacey believed the Interference with an Open Air Meeting Ordinance was used because someone researched it and determined the potential conduct that could violate the Ordinance. *See* Exhibit 5 (Lacey Deposition Transcript, 202:6-13).

8. Cmdr. Lacey observed the protesters go from the area of 142nd and MLK Drive to Park Avenue and Washington in order to get closer to the meeting. *See* Exhibit 5, (Lacey Deposition Transcript, 101:8-102:15; 124:14-15).

9. Cmdr. Lacey observed Manjee shouting and being on a bull horn. *See* Exhibit 5 (Lacey Deposition Transcript, 190:18-21).

10. Prior to detaining Manjee, Cmdr. Lacey observed individuals at the meeting turning around and looking in the direction of the protest. *See* Exhibit 5, (Lacey Deposition Transcript, 190:3-191:4; 194:6-195:21).

11. Cmdr. Lacey believed the events of September 1, 2021 were chaotic and believed the best thing to do in order to control the situation on site was to take people to the station, write citations, and let them go. *See* Exhibit 5, (Lacey Deposition Transcript, 127:3-14).

12. On September 1, 2021, Sgt. Harris provided assistance to Cmdr. Lacey regarding the protest. *See* Exhibit 2 (Harris Deposition Transcript, 83:15-85:7).

13. Cmdr. Lacey ordered the crowd of individuals at the Washington Street and Park Avenue location, where Manjee is visible, to disperse because they were "causing a disturbance". *See* Exhibit 11 (BWC Village.001870 – approximately 18:55:30-40); Exhibit 16 (BWC Village.001854 – approximately 17:55:15-40).

14. Manjee used a microphone and/or bullhorn during his activities on September 1, 2021. *See* Exhibit 3 (Manjee Deposition Transcript, 29:13-16); Exhibit 14 (BWC Village.001853 – approximately 17:34:51-17:35:02; 17:42:26-17:43:01); Exhibit 10 (BWC Village.001858 – approximately 17:58:48-52).

15. The Village Hall parking lot can be seen from a block away. *See* Exhibit 5 (Lacey Deposition Transcript, 195:1-6).

16. The Village Hall can be seen from 142nd and MLK Drive. *See* Exhibit 2 (Harris Deposition Transcript, 174:13-18).

17. There is a subjective determination by the police officer as to what would be a violation of the Ordinance. *See* Exhibit 4 (Staples Deposition Transcript, 52:19-53:6); Exhibit 1 (30(b)(6) 87:24-88:23).

18. The meeting was previously scheduled to take place on August 26, but was canceled due to concerns for the Mayor's safety. *See* Exhibit 1 (30(b)(6) Deposition Transcript, 26:3-20.

19. Shortly after the incident with Alexis Wilson, there were people protesting in front of the Mayor's house. *See* Exhibit 6 (DeVries Deposition Transcript, 50:25-51:9).

20. In response to the protests in front of the Mayor's home, there was a police detail stationed there. *See* Exhibit 6 (DeVries Deposition Transcript, 13:8-18; 51:10-11).

21. Cmdr. Lacey was the one who decided to issue the citation to Manjee. *See* Exhibit 2 (Harris Deposition Transcript, 143:7-9); *see* Exhibit 5 (Lacey Deposition Transcript, 173:14-20).

22. Sgt. Harris made contact with Manjee's hands and his arm after he was handcuffed and standing up, while escorting him to where he was going to be placed in a vehicle. *See* Exhibit 2 (Harris Deposition Transcript, 136:8-137:11); Exhibit 10 (BWC Village.001858 – approximately 17:59:26-18:00:52).

23. Cmdr. Lacey placed the handcuffs on Manjee. *See* Exhibit 2 (Harris Deposition Transcript, 136:8-11); Exhibit 10 (BWC Village.001858 – approximately 17:59:21-27).

24. Cmdr. Lacey walks over with handcuffs to Manjee after Manjee has been pulled away by another individual. *See* Exhibit 10 (BWC Village.001858 – approximately 17:59:00-17:59:08).

25. Manjee continues to walk backwards away from Cmdr. Lacey as Cmdr. Lacey is walking towards him. There are other protesters next to Manjee. *See* Exhibit 10 (BWC Village.001858 – approximately 17:59:00-17:59:08).

26. Manjee moves behind another protester as Cmdr. Lacey is attempting to detain Manjee. *See* Exhibit 10 (BWC Village.001858 – approximately 17:59:08-17:59:16).

27. After Cmdr. Lacey takes hold of Manjee's arm/wrist, Cmdr. Lacey is seen pressing his elbow against Manjee's back and Manjee ends up on his knees. *See* Exhibit 11 (BWC Village.001870 – approximately 18:59:12-29).

28. Manjee has one knee on the grass and one knee on the sidewalk. *See* Exhibit 15.

29. Manjee was not on his knees for 30 seconds to a minute; it was only approximately 10 seconds. *See* Exhibit 10 (BWC Village.001858 – approximately 17:59:20-28).

30. Manjee's physical demeanor after he stands up after being cuffed by Cmdr. Lacey does not indicate that he is in any physical pain. *See* Exhibit 10 (BWC Village.001858 – approximately 17:59:22-35)

31. Manjee did not have any physical injuries. *See* Exhibit 3 (Manjee Deposition Transcript, 73:18-74:4); *see* Exhibit 8 (Manjee's Interrogatory Answer No. 9).

32. Manjee described his detainment as being "grabbed" and forcing him down "aggressively" to the sidewalk, also claiming a lot of pressure was exerted on his knees. *See* Exhibit 3 (Manjee Deposition Transcript, 35:23-36:17).

33. Manjee did not recall have any bruises on his body. *See* Exhibit 3 (Manjee Deposition Transcript, 59:17-19).

34. Manjee claimed his knees hurt "through the duration of the night". *See* Exhibit 3 (Manjee Deposition Transcript, 59:11-13).

4

35. Manjee asked Sgt. Harris if he knew the score of the White Sox game. *See* Exhibit 3 (Manjee Deposition Transcript, 43:23-44:2).

36. Manjee asked Sgt. Harris how he was and Sgt. Harris said he was "fine". *See* Exhibit 2 (Harris Deposition Transcript, 148:2-6); Exhibit 10 (BWC Village.001858 – approximately 17:59:45-48).

37. Manjee is not limping during his walk with Sgt. Harris away from the crowd, or making any complaints about being in pain from the grip Sgt. Harris had on Manjee's arm. *See* Exhibit 10 (BWC Village.001858 – approximately 17:59:35-18:00:52); Exhibit 12 (BWC Village.001862 – approximately 18:59:57-19:00:17; 19:07:46-19:09:15).

38. Officer Lee is the one he tasked with writing the citation. *See* Exhibit 7 (Lee Deposition Transcript, 41:8-22).

39. Sgt. Harris never showed up to the administrative hearings. *see* Exhibit 2 (Harris Deposition Transcript, 33:9-12).

40. Officer Lee was a new officer on the Dolton Police force on September 1, 2021. *See* Exhibit 7 (Lee Deposition Transcript, 5:21-25; 8:3-5).

41. The maximum penalty for violating Ordinance 5-8-11 is a $500 fine. *See* Exhibit 6 (DeVries Deposition Transcript, 66:3-6); Exhibit 3 (Manjee Deposition Transcript, 89:24-90:8); Exhibit 9.

42. Once Manjee received his citation, he was able to leave. *See* Exhibit 3 (Manjee Deposition Transcript, 47:19-24).

43. Manjee claims he experienced stress from the court process, including having to get a ride to Dolton from Chicago. *See* Exhibit 3 (Manjee Deposition Transcript, 74:5-75:16).

44. Manjee had never been to the Village of Dolton prior to the protest on September 1, 2021 and does not know anyone who lives in the Village of Dolton. *See* Exhibit 3 (Manjee Deposition Transcript, 12:4-16).

45. Sgt. Harris has no recollection of seeing Manjee before the demonstration. *See* Exhibit 2 (Harris Deposition Transcript, 135:15-17).

46. Prior to detainment, police spoke to the crowd of people, but not directly to Manjee. *See* Exhibit 3 (Manjee Deposition Transcript, 22:15-23:2; 26:14-17).

47. Manjee had no contact with Cmdr. Lacey outside of the incident. *See* Exhibit 3 (Manjee Deposition Transcript, 79:19-23); *see* Exhibit 8 (Manjee's Answer to Interrogatory No. 16).

48. A woman in a grey shirt is reaching into Manjee's pockets. *See* Exhibit 10 (BWC Village.001858 – approximately 17:59:08-26).

49. Cmdr. Lacey is attempting to handcuff Manjee while a crowd of other individuals are immediately next to them, which other officers are trying to contain. *See* Exhibit 10 (BWC Village.001858 – approximately 17:59:20-28).

50. Manjee gets out of the police car at the station, seen to be walking normally, asks Officer Gilhooly "how's it going". *See* Exhibit 13 (BWC Village.001864 – approximately 19:24:11-23).

51. Manjee is not seen limping as he is walking into the police station, or up to the point he is left in a room by himself, and makes no complaints about being in pain. *See* Exhibit 13 (BWC Village.001864 – approximately 19:24:23-19:25:27).

52. Sgt. Harris could not say who made the decision to put up the barricades, but assumed it was the administration. *See* Exhibit 2 (Harris Deposition Transcript, 47:4-16).

                                            Respectfully submitted,
                                            DEFENDANTS

                                            By: */s/ Alisha N. Chambers*

Cynthia S. Grandfield (ARDC No. 6277559) / Alisha N. Chambers (ARDC No. 6326696)
DEL GALDO LAW GROUP, LLC / 111 N. Wabash, Suite 908, Chicago, Illinois 60602
(312) 222-7000 (t) / grandfield@dlglawgroup.com / chambers@dlglawgroup.com